FILED
United States Court of Appeals
Tenth Circuit

**March 31, 2008**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DAVID CIDRILLO POMPA,

       Plaintiff - Appellant,

  and

ROSEMARY SANTELER; SHAWN
MICHAEL DOMIANUS; SCOTT
CHRISTOPHER DOMIANUS, by and
through their natural parent and next
friend Terry Domianus,

       Plaintiffs,

    v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY, a
Wisconsin corporation,

       Defendant - Appellee.

No. 07-1138

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 05-cv-2366-WYD-PAC)**

---

Zachary C. Warzel (Michael J. Rosenberg, with him on the brief), of Roberts,
Levin & Patterson, P.C., Denver, Colorado, for Plaintiff -Appellant.

Suzanne Lambdin (Stephanie A. Montague, with her on the brief), of Lambdin &
Chaney, LLP, Denver, Colorado, for Defendant - Appellee.

---

Before **HARTZ** and **GORSUCH**, Circuit Judges, and **BRIMMER,**[*] District Judge.

_____

**HARTZ**, Circuit Judge.

_____

At issue in this appeal is whether Defendant American Family Mutual Insurance Co. (AFM) had a duty to defend and indemnify its insured, Plaintiff David Cidrillo Pompa, with respect to a wrongful-death action brought against him. AFM argues that Mr. Pompa's plea of guilty to negligent homicide for the conduct that gave rise to the wrongful-death action triggers the criminal-conviction exclusion in his homeowner's insurance policy. Mr. Pompa counters that the exclusion applies only to a conviction after trial, that public policy bars the exclusion, and that Colorado law does not permit consideration of his conviction in determining the duty to defend when the wrongful-death complaint makes no mention of it. We reject Mr. Pompa's arguments and affirm the judgment of the district court that AFM had no duty to defend or indemnify Mr. Pompa.

## I.   BACKGROUND

In September 2002 Mr. Pompa and Steven Domianus had an altercation that resulted in Domianus's death. Mr. Pompa pleaded guilty to criminally negligent

_____

[*]Honorable Clarence A. Brimmer, United States District Judge, District of Wyoming, sitting by designation.

homicide in May 2003. Domianus's heirs then filed a wrongful-death action against Mr. Pompa in Colorado state court. Mr. Pompa, a holder of homeowner insurance with AFM, requested it to defend the civil action. AFM, relying on the intentional-injury and criminal-conviction exclusions in Mr. Pompa's insurance policy, denied that it owed Mr. Pompa a duty of defense or indemnification. A judgment was entered against Mr. Pompa in the amount of $983,609.90, plus costs. Mr. Pompa, unable to satisfy the judgment, then entered into a settlement agreement with Domianus's heirs in which he agreed to bring an action against AFM and assign to them the bulk of the proceeds he obtained.

Mr. Pompa filed an action in Colorado state court against AFM, alleging breach of contract, willful breach of contract, and bad-faith breach of insurance contract. AFM removed the suit to the United States District Court for the District of Colorado under 28 U.S.C. § 1441 and filed a motion for summary judgment, claiming that under the policy's criminal-conviction exclusion it had no duty to defend Pompa. That exclusion provides that AFM "will not cover bodily injury or property damage arising out of . . . violation of any criminal law for which any insured is convicted." Aplt. App. at 78. The defense provision of the contract states that AFM will provide a defense at its expense "[i]f a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this policy applies." *Id*. at 76.

Mr. Pompa responded with three arguments why the exclusion did not apply. First, he contended that the criminal-conviction exclusion applies only when the insured has been convicted by a jury. He argued that the phrase "for which any insured is convicted" is ambiguous because it could be referring only to convictions obtained after trial, as opposed to those obtained through guilty pleas, and that any ambiguity had to be resolved in favor of coverage. Second, he contended that applying the exclusion would violate public policy because virtually any act creating liability could be prosecuted as a criminal offense, depending on the exercise of discretion by the prosecutor. Third, he argued that the "complaint rule," which holds that the determination of an insurer's duty to defend must be based solely on the allegations of the complaint, precluded the court from considering his conviction for negligent homicide because the wrongful-death complaint did not allege that he had been convicted of any crime. The district court rejected these arguments and granted summary judgment to AFM. Mr. Pompa renews these three arguments on appeal.

## II.    DISCUSSION

We review de novo the district court's grant of summary judgment, applying the same legal standard that governs the district court. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a

matter of law. *See* Fed. R. Civ. P. 56(c). The parties agree that there are no factual disputes and that we must apply the substantive law of Colorado. As we shall see, the Colorado Supreme Court has not addressed the specific issues raised in this appeal, so we must predict how that court would rule. *See Rash v. J.V. Intermediate, Ltd.*, 498 F.3d 1201, 1206 (10th Cir. 2007) ("Where the state's highest court has not addressed the issue presented, the federal court must determine what decision the state court would make if faced with the same facts and issue." (internal quotation marks omitted)).

A.     **Interpretation of the Criminal-Conviction Exclusion**

Mr. Pompa argues that the criminal-conviction exclusion is ambiguous because the word *convicted* has two meanings. He acknowledges that it could refer to any conviction, whether obtained by guilty plea or after trial, but contends that it could also refer only to convictions after a trial. The district court erred, he asserts, in choosing the more expansive interpretation over his reasonable narrower interpretation. We disagree.

Colorado law requires that ambiguities in an insurance policy be construed in favor of the insured. *E.g.*, *State Farm Mut. Auto Ins. Co. v. Stein*, 940 P.2d 384, 390 (Colo. 1997). The prerequisite to application of this rule is a determination that the policy is ambiguous. "Terms used in a contract are ambiguous when they are susceptible to more than one reasonable interpretation." *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1091 (Colo. 1991). The mere

fact that the parties disagree on the meaning of a term does not establish ambiguity. *See Nat'l Cas. Co. v. Great Sw. Fire Ins. Co,* 833 P.2d 741, 746. Nor can a policy term "be read in isolation to create an ambiguity in the policy as a whole where none exists." *Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo. 1994). In construing a term, a court should ascertain what "a person of ordinary intelligence" would understand the term to mean, *Stein,* 940 P.2d at 390, giving words their "plain meaning according to common usage." *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990).

To support their interpretations of the word *conviction*, both parties quote dictionary definitions. AFM offers: "The act or process of judicially finding someone guilty of a crime; the state of having been proved guilty." Black's Law Dictionary 358 (8th ed. 2004). Mr. Pompa, in turn, points to: "In a general sense, the result of a criminal trial which ends in a judgment or sentence that the accused is guilty as charged." Black's Law Dictionary 333 (6th ed. 1990). He asserts that his definition's appearance in a leading legal dictionary compels the conclusion that his interpretation is reasonable and the term thus ambiguous. Dictionaries, however, are "imperfect yardsticks of ambiguity." *New Castle County v. Hartford Accident & Indem. Co.*, 933 F.2d 1162, 1193–94 (3rd Cir. 1991). A word may take on a variety of meanings in different contexts. Dictionaries can inform us of all the accepted meanings, but not which of those meanings fits in a particular context. As one court perceptively observed:

> The mere fact that a word has more than one dictionary meaning, or that the parties disagree about the meaning, does not necessarily make the word ambiguous if the court concludes that only one meaning applies in the context and comports with the parties' objectively reasonable expectations. Thus it is inappropriate to create ambiguity by simply finding two different dictionary definitions of [a] word . . . . Dictionary definitions can shed only partial light on the reasonable understanding of an insured with regard to words in the context of a particular insurance policy.

*Sprangers v. Greatway Ins. Co.*, 514 N.W.2d 1, 7 (Wis. 1994) (citation and footnote omitted). In particular, construction of a potentially ambiguous term in an insurance-policy provision requires consideration of the purpose of the provision. *See Branscum v. Am. Cmty. Mut. Ins. Co.*, 984 P.2d 675, 678 (Colo. Ct. App. 1999) (a court should consider the purpose of a policy in construing a policy term).

The undoubted purpose of the criminal-conviction exclusion is to avoid extending coverage to liability stemming from acts that the government has decided to prosecute criminally and has prosecuted successfully. There would be no reason for the AFM policy to distinguish between a conviction obtained by a guilty plea and a conviction obtained after a trial. Mr. Pompa argues that an insured who is innocent of a crime may decide to plead guilty to a lesser offense rather than face the risk of being convicted of a more serious crime. But we are not persuaded that an insurer, or even an insured, would think that a guilty plea is so much less reliable than a trial verdict that a plea should be treated differently than a verdict for purposes of this policy exclusion.

-7-

Mr. Pompa's sole case support for the distinction consists of decisions that distinguish between a guilty plea and a conviction at trial when resolving whether issue preclusion applies in a later civil case. *See generally State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 380–81 (5th Cir. 1997) (listing cases). The underlying rationale for issue preclusion, however, rests not so much on views regarding reliability as on concerns about excessive use of judicial resources: a party that has actually litigated an issue should not be given an extra bite at the apple. Thus, a party that has stipulated to a fact in a civil case (which would ordinarily be an indication that the fact is indisputable) is not barred by issue-preclusion doctrine from challenging the fact in later litigation because it has not yet actually litigated the issue. *See* Restatement (Second) of Judgments § 27 cmt. e (1982). The point in the cases relied upon by Mr. Pompa is not that one who pleads guilty is not "convicted" of the crime; rather, it is that guilt was not "actually litigated" to arrive at the conviction, just as a stipulated fact was not actually litigated to arrive at a civil judgment. *See, e.g.*, *Rawling v. City of New Haven*, 537 A.2d 439, 445 (Conn. 1988) (plea is not entitled to issue-preclusive effect because a plea is not "the product of actual litigation"); *Aetna Cas. & Sur. Co. v. Niziolek*, 481 N.E.2d 1356, 1363 (Mass. 1985) ("[N]o issue is actually litigated since the defendant declines to contest his guilt in any way." (brackets and internal quotation marks omitted)); Restatement (Second) of Judgments § 85

-8-

cmt (b) (similar). In any event, none of the issue-preclusion cases cited by Mr. Pompa states that a guilty plea is not a conviction.

Not only has Mr. Pompa failed to provide a reason why the insurance company would want to exclude guilty pleas from the definition of *convicted* in the policy, but he has made no effort to show why an insured would prefer the more limited definition in acquiring the policy. To be sure, the narrower definition could result in coverage that would otherwise be excluded. Consider, however, the quandary in which that definition would place an insured accused of a crime. The pressure to plead guilty escalates when the insured knows that he will not receive insurance protection if he opts for a trial of the criminal charges and is convicted. For example, the desire to preserve his reputation could be overborne by a feeling of responsibility toward the economic well-being of his family. We doubt that a potential purchaser of the policy would be particularly pleased to learn that if he is charged with a crime, all he would need to do to preserve coverage is plead guilty.

There being only one reasonable interpretation of the word *convicted* in this policy, we conclude that the district court did not err in holding that the policy unambiguously excluded coverage for the conduct for which Mr. Pompa pleaded guilty.

**B.     Public Policy**

Mr. Pompa next argues that even if the criminal-conviction exclusion is not ambiguous, it nonetheless violates public policy. An exclusion that encompasses negligent conduct, he contends, defeats the reasonable expectations of the insured as to coverage because the purpose of purchasing liability insurance is to shield against liability arising from negligent acts and most negligent acts are a violation of some criminal law. He asserts that it is contrary to public policy to allow an exclusion that "eviscerate[s] coverage for such a large class of otherwise covered negligent acts." Aplt. Br. at 38. We are not persuaded.

To begin with, to the extent that Mr. Pompa asserts that his crime was one of simple negligence, he is incorrect. The offense was criminally negligent homicide, which is defined as "caus[ing] the death of another person by conduct amounting to criminal negligence." Colo. Rev. Stat. Ann. § 18-3-105 (2008). Under Colorado law, "[a] person acts with criminal negligence when, through a gross deviation from the standard of care that a reasonable person would exercise, he fails to perceive a substantial and unjustifiable risk that a result will occur or that a circumstance exists." *Id*. § 18-1-501(3). Thus, criminally negligent homicide requires "a failure to perceive, through a gross deviation from the standard of reasonable care, a substantial and unjustifiable risk that death will result from certain conduct." *People v. Shaw*, 646 P.2d 375, 380 (Colo. 1982). Simple negligence will not suffice.

-10-

Moreover, Mr. Pompa's public-policy argument is not supported by Colorado case law. Ordinarily, limitations on insurance coverage are acceptable. *See O'Connor v. Proprietors Ins. Co.*, 696 P.2d 282, 284 (Colo. 1985). Colorado courts have held only two types of exclusions in insurance policies to violate public policy. One is exclusions that attempt to "dilute, condition, or limit statutorily mandated coverage." *Farmers Ins. Exch. v. Dotson*, 913 P.2d 27, 30 (Colo. 1996) (internal quotation marks omitted). But Mr. Pompa has not pointed to any Colorado statute that proscribes a criminal-conviction exclusion or that mandates coverage for acts covered by such an exclusion.

The second type consists of exclusions that render coverage illusory, "in effect allow[ing] the insurer to receive premiums when realistically it is not incurring any risk of liability." *O'Connor*, 696 P.2d at 285. The *O'Connor* court suggested that a provision in an aircraft insurance policy that denied coverage if an accident occurred while the aircraft was in violation of any Federal Aviation Administration (FAA) regulation might violate public policy. Such a provision would eliminate any risk of liability because it is virtually impossible for a plane crash to occur without violating at least one FAA regulation. *See id.* Likewise, an exclusion that nullified coverage for all negligent acts would strip coverage from essentially every case in which liability might arise. But the criminal-conviction exclusion leaves the vast majority of otherwise covered conduct untouched—namely, all negligent acts for which the insured is not criminally

-11-

convicted. Indeed, the Colorado Court of Appeals upheld a provision excluding coverage for "criminal acts" because it did not "eviscerate the grant clause, but merely exclude[d] a reasonable subset of injuries—those resulting from criminal acts." *Allstate Ins. Co. v. Juniel*, 931 P.2d 511, 516 (Colo. Ct. App. 1996). *See also Horace Mann Ins. Co. v. Peters*, 948 P.2d 80, 86 (Colo. Ct. App. 1997) (intentional-acts exclusion did not nullify all of policy coverage).

Accordingly, we conclude that a Colorado court would not find AFM's criminal-conviction exclusion to be void as contrary to public policy.

### C. The "Complaint" Rule

Finally, Mr. Pompa contends that the district court erred in considering a fact extrinsic to the wrongful-death complaint—namely, his conviction of negligent homicide—to reject his claim that AFM had a duty to defend him in the wrongful-death litigation. His contention derives from a doctrine variously called the "complaint" rule, the "comparison test," the "four corners" rule, or the "eight corners" rule (referring to both the complaint and the policy). Under the complaint rule, the insurer's duty to defend is determined by examination of solely the policy and the complaint.

The complaint rule applies only when the insurer has failed to provide a defense throughout the underlying litigation. When the insurer has provided that defense (presumably under a reservation of rights) and then seeks to recover defense costs from the insured, the insurer may "rely on facts outside of the

-12-

complaint" to show that "the incident resulting in liability was not covered by the policy." *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 827 (Colo. 2004) (emphasis and internal quotation marks omitted). But if the insurer wishes to avoid the cost of a defense before the underlying litigation has concluded—either by simply refusing to defend or by bringing a declaratory judgment action while the litigation is proceeding—its duty to defend is determined under the complaint rule. *See id.* at 828–29. That determination is made as follows:

> An insurer's duty to defend arises when the underlying complaint against the insurer alleges any facts that might fall within the coverage of the policy. The actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend. Rather, the obligation to defend arises from allegations in the complaint, which if sustained, would impose a liability covered by the policy. Where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim.

*Hecla*, 811 P.2d at 1089 (citation, footnote, brackets and internal quotation marks omitted); *see also Cotter,* 90 P.3d at 828.

The Colorado Supreme Court has articulated two reasons for adopting the complaint rule. First, the rule "protects the insured's 'legitimate expectation of a defense.'" *Id.* at 828 (quoting *Hecla*, 811 P.2d at 1090). Because of that legitimate expectation, the risk of the uncertainty of coverage should fall on the

-13-

insurer.  That is, the insured should not have to bear the burden of advancing the costs of defense just because there is a possibility that future developments in the case will establish that there is no insurance coverage.  Rather, the insurer should have to pay the defense costs and then recover from the insured if it turns out that there was no coverage.  As *Cotter* put it, "By purchasing insurance, the insured reasonably expects that he will not be required to furnish the cost of defending actions that facially fall within the terms of his policy."  *Id*. at 828.  *See also Hecla*, 811 P.2d at 1090.  The insured will be deprived of the peace of mind that insurance promises if the insurer can refuse to defend the case, await developments, and then decide to reimburse the insured for defense costs only once it is clear that there was coverage.  To deter such refusals, an insurer who refused to provide a defense during the litigation is excused from reimbursing defense costs only if it is clear from the complaint that there was no coverage. *See Cotter*, 90 P.3d at 828.

Second, the complaint rule prevents the insured's defense in the underlying action from being compromised by a declaratory-judgment action brought by the insurer while the underlying action is in progress.  *See Hecla*, 811 P.2d at 1090 n.10.  In certain circumstances, the insured, in attempting to establish coverage under the policy, might have to produce evidence in the declaratory-judgment action that would subject it to liability in the underlying action.  *See id.* (pointing out how that could happen in that case).  The complaint rule, by postponing the

consideration of facts not alleged in the underlying action until the conclusion of that action, avoids placing the insured in this dilemma. This rationale for the complaint rule does not appear to apply when the insurer simply refuses to provide coverage and then defends against the insured's claim for defense costs upon conclusion of the underlying action. In that circumstance the litigation between the insurer and insured cannot prejudice the insured in the underlying action because that litigation is over. But *Cotter* explains that the basis of the duty to defend should be the same whether (1) the insurer brings a declaratory-judgment action during the underlying litigation (when this rationale for the complaint rule applies) or (2) the insurer refuses to defend and the insured then seeks reimbursement of defense costs. If the coverage determination for the insurer who refused to defend were not based on the complaint rule, there would be "an incentive for insurers to refuse to defend in the hope that [the underlying] litigation w[ould] reveal that no duty to defend exists." 90 P.3d at 828.

Although the Colorado Supreme Court has not recognized any exceptions to the complaint rule, other courts have. One widely recognized exception states that "an insurer should not have a duty to defend an insured when the facts alleged in the complaint ostensibly bring the case within the policy's coverage, but other facts that are not reflected in the complaint and are unrelated to the merits of the plaintiff's action plainly take the case outside the policy coverage." 1 Allan D. Windt, Insurance Claims and Disputes § 4.4, at 293–94 (4th ed. 2001),

-15-

citing, among other cases, *Dairy Rd. Partners v. Island Ins. Co., Ltd.*, 992 P.2d 93, 117 (Haw. 2000) (insurer may "disclaim its duty to defend by showing that *none* of the facts upon which it relies might be resolved differently in the underlying lawsuit."). *See also 22* Eric Mills Holmes & L. Anthony Sutin, Holmes' Appleman on Insurance ¶ 136.3, at 22 (2d ed. 2003) ("When the extrinsic facts relied on by the insurer are relevant to the issue of coverage, but do not affect the third party's right of recovery, courts occasionally have held that the insurer may refuse to defend third-party actions, even though the allegations in the complaint suggest that coverage exists."); 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 200:21 n.1 (3d ed. 2005) ("Courts have considered known or discoverable facts and/or extrinsic evidence where . . . [c]overage is based on a factual issue which will not be resolved in the underlying case."). Courts have also recognized an exception "when the [insurer] determines that, even assuming that the insured is liable based on the allegations in the complaint, there can, in fact, be no coverage because of the falsity of some extraneous fact alleged in the complaint," Windt, *supra*, at 299.

Given this authoritative support for some exceptions to the complaint rule, we believe that the Colorado Supreme Court would recognize an exception when doing so would not undercut the purposes served by the rule. Lending support to our belief is the Colorado Supreme Court's suggestion that it might, in an appropriate case, recognize such an exception. *Cotter* stated in a footnote: "For

-16-

now, we assume [the complaint] rule applies to bona fide allegations contained in a complaint. We leave open the question whether allegations framed to trigger an insurance policy create a duty to defend." 90 P.3d at 829 n.9. *See also Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 563 n.10 (Colo. 1996) ("We leave for another day the question of whether unsupported allegations framed to trigger insurance coverage give rise to a duty to defend under *Hecla*.").

In our view, such an exception would apply here. Mr. Pompa's conviction is an indisputable fact that is not an element of either the cause of action or a defense in the underlying litigation (the wrongful-death case). Recognizing an exception in this circumstance would not undercut the policies supporting the complaint rule. First, it would not defeat the legitimate expectations of the insured to a defense, because an insured can have no reasonable expectation of a defense when an indisputable fact, known to all parties, removes the act in question from coverage. That the complaint made no mention of Mr. Pompa's conviction cannot turn an expectation of a defense in these circumstances into a reasonable one. Nor would recognition of this exception jeopardize the insured's defense in the underlying action, because the extrinsic fact is undisputed. Even if the wrongful-death action against Mr. Pompa were still in progress, recognizing, for purposes of a coverage determination, the indisputable fact of his conviction could not prejudice his defense in the wrongful-death action. Moreover, recognizing this exception serves a beneficial purpose: freeing an insurer from

having to defend an action that from the outset clearly falls outside the policy's coverage, particularly when, as here, the insurer has no realistic hope of recovering the costs of the defense from its insured. *See Constitution Assocs.*, 930 P.2d at 563 (when allegations of complaint do not give rise to duty to defend, "it may be appropriate to allow the insurer an opportunity to obtain an anticipatory declaration of its obligations towards its insured prior to the expenditure of considerable resources.").

To be sure, the Colorado Supreme Court has not yet embraced this exception to the complaint rule. But it has not had the opportunity. We have found no Colorado case in which the court could have applied this exception. The three leading cases in which the Colorado Supreme Court discussed the complaint rule all involved insurance policies that excluded from coverage property damage arising from the discharge of pollution, unless that discharge was "sudden and accidental." *See Cotter*, 90 P.3d at 820; *Compass Ins. Co. v City of Littleton*, 984 P.2d 606, 612 (Colo. 1999); *Hecla*, 811 P.2d at 1087. In all three cases the insurers sought to avoid defending the insureds because, they claimed, the discharges of pollution were not "sudden and accidental." *See Cotter*, 90 P.3d at 817; *Compass*, 984 P.2d at 612; *Hecla*, 811 P.2d at 1087. The allegations in the complaints were broad enough to cover "sudden and accidental" discharges, *see Cotter*, 90 P.3d at 829; *Compass*, 984 P.2d at 618; *Hecla*, 811 P.2d at 1092, and whether the discharges were "sudden and accidental" was disputed. In all three

-18-

cases the Colorado Supreme Court held that the insurers were obligated to defend the insureds because the allegations of the complaints created the potential for liability covered by the policies. *Cotter*, 90 P.3d at 829; *Compass*, 984 P.2d at 618; *Hecla*, 811 P.2d at 1092. In none of the cases did the insurers attempt to escape coverage by relying on an undisputed fact that was not an element of the claim or defense in the underlying litigation. The court in these cases[1] therefore did not have an opportunity to consider whether the exception we adopt might apply.

Moreover, the one circumstance about which the Colorado Supreme Court has explicitly reserved judgment regarding the application of the complaint rule—a bad-faith allegation "framed to trigger an insurance policy," *Cotter*, 90 P.3d at 829 n.9,—is such a close cousin to the circumstance here that we can assume that the court would, at the least, not reject out of hand the exception we recognize. After all, the best evidence that an allegation triggering coverage is not bona fide is that it is indisputably untrue and is not necessary to establish

---

[1]Mr. Pompa also cites *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294 (Colo. 2003), for support. But the insurance policy at issue in *Cyprus* provided only indemnification, not defense. *See id.* at 300. The Colorado Supreme Court also mentioned the complaint rule in *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 502 (Colo. 2004), and alluded to it in *Constitution Assocs.*, 930 P.2d at 563, but neither case concerned evidence extrinsic to the complaint. The question in *Thompson* was whether the complaint sufficiently alleged elements of a claim covered by the policy to bring it within the policy's coverage, *see* 84 P.3d at 503–04, and *Constitutional Associates* concerned the circumstances under which a court should entertain an anticipatory declaratory-judgment action, *see* 930 P.2d at 561.

liability in the underlying litigation. The potential exception noted in *Cotter* would be applicable if the wrongful-death complaint had alleged that Mr. Pompa had not been convicted of an offense against Steven Domianus. That exception and the one we endorse are almost mirror images of one another.

Finally, we observe that if one adopts an interpretation of the complaint rule that is consistent with the notion of a complaint under the rules of civil procedure, our conclusion follows without any need to recognize an exception to the rule. When considering a motion to dismiss a complaint for failure to state a claim, Colorado courts may consider matters of which they can take judicial notice even if not mentioned in the complaint. *See Walker v. Van Laningham*, 148 P.3d 391, 397–98 (Colo. Ct. App. 2006) (considering convictions of plaintiffs), citing 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2], at 1269 (3d ed. 1997) and 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed. 2004); *cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007). In essence, judicially noticeable facts are incorporated into the complaint. Because the district court could have taken judicial notice of Mr. Pompa's conviction, that fact can be said to appear within the four corners of the complaint.

## III.   CONCLUSION

Based on the valid and unambiguous criminal-conviction exclusion, applicable because of the uncontested fact of Mr. Pompa's conviction, AFM had

-20-

no duty to defend Mr. Pompa in the wrongful-death action against him. The judgment of the district court is AFFIRMED.