FILED
United States Court of Appeals
Tenth Circuit

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

April 17, 2025

**Christopher M. Wolpert**
**Clerk of Court**

_____

MICHAEL CATALANO, JR.,

    Plaintiff - Appellant,

v.

ALLSTATE INDEMNITY COMPANY,

    Defendant - Appellee.

No. 24-1126
(D.C. No. 1:23-CV-01465-DDD-MEH)
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **EID**, **KELLY**, and **CARSON**, Circuit Judges.

_____

Plaintiff-Appellant, Michael Catalano, Jr., appeals from the district court's grant of summary judgment to Defendant-Appellee, Allstate Indemnity Company ("Allstate"), on Mr. Catalano's claim for breach of contract. On appeal, Mr. Catalano argues that the district court erred by defining "sudden" too narrowly and by ignoring evidence that indicated that the loss was sudden. Aplt. Br. at 12, 14. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

The underlying facts are largely undisputed.  Aplt. Br. at 6.  Mr. Catalano owns a residential rental property located at 2927 North Marion Street in Denver, Colorado, which he rented to tenant Neil Stalker.  I Aplt. App. 21; II Aplt. App. 80.  At all times relevant to this case, Mr. Catalano maintained a Landlord's Package Insurance Policy on the property through Allstate.  I Aplt. App. 108.  The policy contained the following grant of coverage:

> We will cover <u>sudden and accidental direct physical loss</u> to property described in Coverage A Dwelling Protection and Coverage B Other Structures Protection except as limited or excluded in this policy.

Id. at 108–09 (emphasis added).  The policy excluded damage caused by earth movement:

> We do not cover loss to the property . . . consisting of or caused by . . . Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth.

Id. at 109.  The policy also excluded loss caused by wear and tear:

> We do not cover loss to the property . . . consisting of or caused by . . . Wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect.

Id.

In August 2020, Colorado Concrete began construction of a new storm/sewer system in the sidewalk adjacent to the rental property.  Id.  According to the tenant, the construction caused the house to shake "quite a bit, pretty much every day for a long

2

time." II Aplt. App. 81.  The vibrations shook the house and lasted a few seconds to a minute before stopping.  Id. at 39, 83.  The construction continued through January 28, 2021, when the tenant discovered damage to the flooring.  Id. at 81.  According to the tenant, "one day the floor was flat, and the next day, the floor was not flat."  Id.  After the tenant informed Mr. Catalano of the damage, Mr. Catalano timely reported a claim to Allstate for damages to the foundation, kitchen, and bathroom floor.  I Aplt. App. 110.

Allstate retained Donan Engineering ("Donan") to inspect the property and investigate Mr. Catalano's claim.  Id.  Donan noted that there was no evidence that vibration from nearby construction caused the floor displacement.  Id. at 175.  Rather, Donan concluded that "[t]he cause of the bathroom floor displacement is age-related deterioration of the brick mortar and inadequate framing."  Id. at 176.  Following Donan's report, Allstate denied Mr. Catalano's claim based on both the earth movement exclusion and the wear and tear exclusion.  Id. at 192.

Mr. Catalano retained Level Engineering, LLC ("Level") which concluded that "[t]he sudden January 2021 floor failure would not have occurred without the ground vibrations caused by" the construction on the street.  II Aplt. App. 76.  Level opined that the vibrations "caused the unanchored north [floor] joists to 'walk' out of the beam pockets," dislodging bricks and damaging the foundation wall.  Id.  Donan reviewed Level's report and opined that Level erroneously attributed brick rotation to the vibration from construction, when the actual cause was "inadequate framing."  I Aplt. App. 197–98.  Thus, Allstate sent a letter to Mr. Catalano stating that his claim was still not within

3

coverage, as the earth movement exclusion applied regardless of what caused the earth movement.  Id. at 111.

Mr. Catalano filed suit against both Allstate and Colorado Concrete in state court. He claimed that Allstate breached the terms of the insurance policy and acted in bad faith when it denied coverage.  Id. at 20–26.  Allstate and Colorado Concrete moved for summary judgment.  I Aplt. App. 106–26.  Shortly thereafter, Mr. Catalano and Colorado Concrete reached a settlement, and Colorado Concrete was dismissed from the case.  Id. at 50.  Allstate then removed the action to federal court on the basis of diversity jurisdiction.  Id. at 12–18.

In seeking summary judgment, Allstate argued that the loss was not "sudden and accidental" because the evidence showed that it occurred due to "natural wear and tear." Id. at 115–17.  Allstate also argued that the evidence showed that the loss was excluded under the earth movement exclusion.  Id. at 117–19.  In response, Mr. Catalano argued that the loss was sudden because "one day the floors were not damaged, then the next day, they were damaged."  II Aplt. App. 42.  Mr. Catalano also argued that the earth movement exclusion did not apply because it did not cover man-made earth movement such as the vibrations caused by the construction.  Id. at 43–45.

The district court noted that it was Mr. Catalano's burden to show that the loss was "sudden" such that it fell within the policy's terms of coverage.  Id. at 178.  Relying on Mock v. Allstate Ins. Co., 340 F. Supp. 3d 1087, 1091 (D. Colo. 2018), the district court defined a "sudden" loss as one "which was brought about in a short time, not loss which occurred over time."  Id. at 179.  The district court then held that the damage to Mr.

4

Catalano's property could not be characterized as "sudden" because "[e]very expert who inspected the damage identified the cause as either the wear and tear of time, or the vibrations caused by the nearby construction" which had been "ongoing for months." Id. at 178–79. Thus, the district court granted Allstate summary judgment on Mr. Catalano's breach of contract claim because, even if a jury accepted Mr. Catalano's expert report, coverage would not exist for gradual damage caused by months of vibrations. Id. at 179. Because the district court granted summary judgment on the grounds that there was no coverage, it did not reach the issue of whether the earth movement exclusion applied. See id. at 176–80. The district court also granted Allstate summary judgment on Mr. Catalano's claim for statutory bad faith because, under Colorado law, a bad faith claim must fail if the underlying breach of contract claim fails and plaintiff's only claimed damages flowed from the denial of coverage. Id. at 179.

## Discussion

On appeal, the parties revive their arguments over whether the loss was sudden and whether the earth movement exclusion applies. For the reasons set forth below, we agree with Mr. Catalano that the district court improperly defined "sudden" in a strictly temporal manner and erred in granting Allstate summary judgment. We also decline Allstate's request to affirm the district court's judgment on the alternative grounds that the earth movement exclusion applies.

### A. Standard of review.

We review a grant of summary judgment de novo, applying the same standard as

the district court.  Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co., 960 F.3d 1255, 1259 (10th Cir. 2020).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Applying this standard, "we consider the evidence in the light most favorable to the non-moving party."  Rocky Mountain Prestress, 960 F.3d at 1259 (quotations omitted).  To avoid summary judgment, the nonmovant must show "more than a mere scintilla of evidence."  Id. (quotations omitted).  Rather, the nonmovant must show evidence such that a reasonable jury could return a verdict in their favor.  Id.

"In this diversity case, we apply Colorado law and interpret insurance policies as a Colorado court would."  Leprino Foods Co. v. Factory Mut. Ins. Co., 453 F.3d 1281, 1287 (10th Cir. 2006).  Under Colorado law, the insured bears the initial burden of demonstrating "causation necessary to bring a loss within the limits of the insurance contract's coverage."  Colo. Intergovernmental Risk Sharing Agency v. Northfield Ins. Co., 207 P.3d 839, 842 (Colo. App. 2008).  The insurer then "bears the burden of proving that a particular loss falls within an exclusion in the contract."  Id.

**B. The district court erred in granting Allstate summary judgment because a reasonable jury could find that the loss was sudden.**

The Colorado Supreme Court has instructed that "[a]n insurance policy is merely a contract that courts should interpret in line with well-settled principles of contract interpretation."  Cyprus Amax Minerals Co. v. Lexington Ins. Co., 74 P.3d 294, 299 (Colo. 2003) (en banc).  When language in an insurance contract is undefined, we must

6

interpret it in accordance with its plain meaning. Renfandt v. New York Life Ins. Co., 419 P.3d 576, 580 (Colo. 2018) (en banc). In determining a term's plain meaning, we may consult definitions in a "recognized dictionary." Id. A term's plain meaning is "what 'a person of ordinary intelligence' would understand the term to mean." Pompa v. Am. Fam. Mut. Ins. Co., 520 F.3d 1139, 1143 (10th Cir. 2008) (quoting State Farm Mut. Auto. Ins. Co. v. Stein, 940 P.2d 384, 390 (Colo. 1997) (en banc)).

Mr. Catalano's insurance policy grants coverage for "sudden and accidental direct physical loss to property." I Aplt. App. 108–09. Mr. Catalano argues that the district court improperly defined "sudden" in a manner that considered only the word's temporal connotation. Aplt. Br. at 13. According to Mr. Catalano, "sudden" means "unexpected and unintended." Id. The Colorado Supreme Court has never defined the word "sudden" in the context of a homeowners' insurance policy, "so we must predict how that court would rule." Pompa, 520 F.3d at 1142.

Mr. Catalano points us to Hecla Mining Co. v. New Hampshire Insurance Co., where the Colorado Supreme Court interpreted the phrase "sudden and accidental" in an insurance policy's pollution exclusion clause to mean "unexpected and unintended." 811 P.2d 1083, 1092 (Colo. 1991) (en banc). After finding that the word "sudden" was ambiguous in the context of the pollution exclusion at issue in that case, the court consulted dictionaries and decisions from other courts to determine its plain meaning. Id. at 1091–92. The court noted that "sudden" has been defined with both a temporal connotation and a connotation based upon expectations. Id. at 1091–92. Eventually, the court concluded that "[a]lthough 'sudden' can reasonably be defined to mean abrupt or

7

immediate, it can also reasonably be defined to mean unexpected and unintended." Id. at 1092. According to Mr. Catalano, Hecla stands as "binding precedent" that "sudden" means "unexpected and unintended." Aplt. Br. at 10.

However, in Mock, the district court explained that "Hecla does not stand for the proposition that the use of the phrase 'sudden and accidental direct physical loss to property' in a homeowners' insurance policy means unexpected and unintended loss to the home." 340 F. Supp. 3d at 1090. Rather, the Colorado Supreme Court decided Hecla in the specific context of the pollution exclusion clause before it and noted that a strictly temporal definition of "sudden" was inconsistent with other definitions within the comprehensive general liability ("CGL") policies. See id. at 1090–91; Hecla, 811 P.2d at 1091–92. Noting that Hecla was not binding precedent in this context, the Mock court conducted its own analysis of the plain meaning of "sudden" and defined a sudden loss as "loss which was brought about in a short time, not loss which occurred over time." 340 F. Supp. 3d at 1091. According to the Mock court, sudden has only a temporal dimension in the context of its use in a homeowners' policy. See id.

Here, the district court adopted Mock's definition of a sudden loss as "loss which was brought about in a short time." See II Aplt. App. 178–79 (quoting Mock, 340 F. Supp. 3d at 1091). But while Mock may be correct that Hecla is not binding precedent in the context of a homeowners' policy, Hecla remains instructive insofar as it demonstrates how the Colorado Supreme Court would analyze the plain meaning of "sudden." 811 P.2d at 1091. Mock focuses too closely on the inconsistency between a strictly temporal definition of "sudden" and the Hecla CGL policy's definition of an "occurrence," as if

8

that were the sole reason that the Colorado Supreme Court construed "sudden" to mean "unintended and unexpected." 340 F. Supp. 3d at 1090–91. Thus, Mock ignores the fact that, without relying on any ambiguity within the CGL policy, the Colorado Supreme Court engaged in an extensive analysis of the plain meaning of sudden and concluded that "sudden" can mean both "abrupt" and "unexpected." Hecla, 811 P.2d at 1091–92 ("Although 'sudden' can reasonably be defined to mean abrupt or immediate, it can also reasonably be defined to mean unexpected and unintended."). We believe Mock is too narrow and find that, under Colorado law, "sudden" cannot be construed to have solely a temporal connotation. See id. at 1092.

We turn first to dictionary definitions of "sudden." Id.; Renfandt, 419 P.3d at 580. According to Merriam-Webster, the two most common definitions for "sudden" are "happening or coming unexpectedly" and "changing angle or character all at once." Sudden, Merriam-Webster, https://www.merriam-webster.com/dictionary/sudden (last visited Feb. 6, 2025). Cambridge English Dictionary defines sudden as "happening or done quickly and without warning." Sudden, Cambridge Dictionary, https://dictionary. cambridge.org/us/dictionary/english/sudden (last visited Feb. 6, 2025). Finally, the American Heritage Dictionary of the English Language defines sudden as "happening without warning; unforeseen." Sudden, American Heritage Dictionary, https://ah dictionary.com/word/search.html?q=sudden (last visited Feb. 6, 2025). Additionally, Black's Law Dictionary has defined sudden as "happening without previous notice or with very brief notice; coming or occurring unexpectedly." Sudden, Black's Law

9

Dictionary (6th ed. 1990). These definitions suggest that the plain meaning of sudden incorporates both a temporal aspect, and an aspect based on expectation.

The "common usage" of "sudden" reinforces this conclusion. Pompa, 520 F.3d at 1143 (quotations omitted). The phrase "all of a sudden" means "very quickly in usually an unexpected way." Sudden, Merriam-Webster; see also Sudden, American Heritage Dictionary (noting that the phrase "all of a sudden" means "very quickly and unexpectedly"). Thus, "a person of ordinary intelligence would understand" the word "sudden" to mean both quick and unexpected, not merely one or the other. Pompa, 520 F.3d at 1143 (quotations omitted). And we do not read this policy to cover any loss "regardless of how long it took to develop." Mock, 340 F. Supp. 3d at 1091. Rather, "sudden" has "an elastic temporal connotation that varies with expectations[.]" Hecla, 811 P.2d at 1092 (quotations omitted). Interpreting "sudden" in a strictly temporal manner that completely erases the expectations of the insured would be contrary to the plain and ordinary meaning of the word.

Having established that the plain meaning of "sudden" incorporates aspects of duration (occurring quickly) and expectation (unexpected), we conclude that the district court erred in granting summary judgment. II Aplt. App. 179. First, considerable evidence suggests that the loss was unexpected. Allstate makes much of the fact that the tenant felt vibrations for months before the loss. Aplee. Br. at 13. However, that does not necessarily resolve whether Mr. Catalano expected (or should have expected) the floor to buckle. A house near an airport might vibrate every day, yet it would be an open question whether a person might expect damage to result from those vibrations.

10

Viewing the evidence in the light most favorable to Mr. Catalano, as we must, a reasonable jury could also find that the loss happened quickly. See Rocky Mountain Prestress, 960 F.3d at 1259. First, the jury could credit Level's conclusion that "long-term deterioration and aging [was] not the cause of the floor failure," but rather the damage was caused by the vibrations from nearby construction. II Aplt. App. 71. The jury could also credit the tenant's recounting that the loss came about quickly, as "one day, the floors were fine; the next day, they were not." Id. at 81. Moreover, the "occasions where vibrations were shaking the house did not extend longer than a few seconds to a minute before stopping." Id. at 39, 83. A reasonable jury could find that the loss was caused suddenly, say by vibrations which did not happen continuously but in separate occurrences lasting no longer than a minute.

The district court also granted Allstate summary judgment on Mr. Catalano's claim for statutory bad faith because, under Colorado law, a bad faith claim must fail if the underlying breach of contract claim fails and plaintiff's only claimed damages flowed from the denial of coverage. Id. at 179. Because we reverse summary judgment as to Mr. Catalano's breach of contract claim, we also reverse the district court's grant of summary judgment on Mr. Catalano's bad faith claim.

Finally, we decline Allstate's request to affirm the district court's judgment on the alternative grounds that the earth movement exclusion applies. Aplee. Br. at 17–18. While we may affirm on any basis supported by the record, "[w]here an issue has not been ruled on by the court below, we generally favor remand for the district court to examine the issue." Forth v. Laramie Cnty. Sch. Dist. No. 1, 85 F.4th 1044, 1070 (10th

11

Cir. 2023) (quotations omitted).  Here, the district court did not address the earth movement exclusion because it held that Mr. Catalano had not met his initial burden of showing that the loss was within the policy's coverage.  II Aplt. App. at 178–79.  Indeed, under Colorado law, the insurer need only prove that an exclusion applies if the insured first meets that initial burden of showing that the loss was covered.  Northfield, 207 P.3d at 842.  Because we conclude that Mr. Catalano met this initial burden, the district court may address the earth movement exclusion on remand.

REVERSED and REMANDED for further proceedings consistent with this order and judgment.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge