540 P.2d 1112 (1975)
COLORADO FARM BUREAU MUTUAL INSURANCE COMPANY, Plaintiff-Appellant,
v.
WEST AMERICAN INSURANCE COMPANY, a member of the Ohio Casualty Group of Insurance Companies, Defendant-Appellee.
No. 74-410.
Colorado Court of Appeals, Div. I.
March 11, 1975.
Rehearing Denied April 1, 1975.
Certiorari Denied June 2, 1975.
Madden & Strate, P. C., George J. Strate, Denver, for plaintiff-appellant.
DeMoulin, Anderson, Campbell & Laugesen, Richard W. Laugesen, Denver, for defendant-appellee.
Selected for Official Publication.
STERNBERG, Judge.
In this action between two insurance carriers, the issue is whether an automobile liability insurance policy or a homeowner's policy provides coverage for an accidental shooting. The trial court held that the plaintiff's automobile policy covered the incident and the defendant's homeowner's policy did not, and therefore entered judgment for the defendant. We affirm.
*1113 One Jerry Roose and six companions were on a hunting trip on October 17, 1972. Roose was the permissive user of one of the two vehicles, a Bronco, being used by the hunting party. The group hunted for deer on the morning of the accident and then returned to the location where they had parked and locked the Bronco. The party decided to load the vehicle with their equipment and drive to another location. Four members of the party entered the second vehicle, which was parked nearby, while the other three walked to the Bronco, intending to enter it. Two of them waited in the area outside of the locked door on the passenger's side, while Roose began to unlock the door on the driver's side. One of the occupants of the other vehicle asked Roose for some binoculars which were in the Bronco. Roose opened the door and laid his rifle on the front seat with the safety on and the barrel facing the passenger's door. Roose was uncertain whether he intended first to reach across the seat and unlock the passenger door or to reach in back for the binoculars, but to do either required him to tilt the front seat forward. Intending to do that, he lifted the rifle and grasped it by the grip on the stock. The safety apparently was moved and the rifle fired. The bullet passed through the passenger door and struck one of the waiting hunters, Witvoet, in both legs.
The pertinent provision of the motor vehicle liability policy issued by plaintiff to Roose is as follows:
"Coverage ABodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, because of bodily injury, sickness or disease including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile, including the loading and unloading thereof." (emphasis added)
Defendant had issued to Roose a homeowner's policy which provided liability coverage. However, it was subject to an exclusion relating to motor vehicles as follows:
"This policy does not apply:
"1. Under Coverage EPersonal Liability and Coverage FMedical Payments to Others:
"a. to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:
. . . . . .
"(2) any motor vehicle owned or operated by, or rented or loaned to any Insured. . . ." (emphasis added)
When Witvoet claimed damages from Roose, both insurance companies initially denied liability, but later agreed that plaintiff should negotiate and attempt to settle Witvoet's claim, reserving its right to litigate the coverage issue. The claim was settled for $25,000, which both parties stipulated was reasonable, and plaintiff thereupon filed this suit to determine whether plaintiff or defendant was liable for Witvoet's claim for bodily injury. After trial the court entered judgment in favor of the defendant and dismissed the complaint.
We do not address the question of whether the coverage for "use" of the vehicle contained in the automobile policy would be broad enough to cover this accident absent the last clause thereof. Rather, the case turns on interpretation of the more specific "loading and unloading" language of the policy.
Relying on Employers Casualty Co. v. Azar, 28 Colo.App. 566, 479 P.2d 979, aff'd, 178 Colo. 58, 495 P.2d 554; and Mason v. Celina Mutual Insurance Co., 161 Colo. 442, 423 P.2d 24, the plaintiff urges that the cause of the accident was the negligent act of discharging a rifle, which has nothing to do with "use" of the automobile, and, therefore, cannot be held to be within the contemplation of the automobile policy. *1114 Neither of those cases relate to loading and unloading of a vehicle, and thus are not determinative. To require that the vehicle be used as a means of transportation before considering the loading and unloading clause to be applicable would be an unduly restrictive interpretation of the policy. As stated in Wilson v. Automobile Owners Association Insurance Co., 148 Colo. 550, 366 P.2d 654:
"Automobile accidents can happen in thousands of different ways. If this insurer had desired to limit its coverage to the types of accidents where an actual collision or upset occurred it could easily have done so. Not choosing so to do before this unfortunate episode it cannot as a matter of law now so limit its liability."
In the instant case, the motor vehicle was an essential element. The rifle and the binoculars had been loaded into it and the victim was waiting to "load" or enter it. See Unigard Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co., 466 F.2d 865 (10th cir.). We agree with the statement quoted with approval in Morari v. Atlantic Mutual Fire Insurance Co., 105 Ariz. 537, 468 P.2d 564, that "`[t]he term "loading and unloading" must be understood as expanding the coverage intended by the word "use" or "using", and is not a term of restriction . . . .'"
In Titan Construction Co. v. Nolf, Colo., 515 P.2d 1123, the Supreme Court adopted the doctrine that automobile liability insurance coverage is afforded where a claim arises during the entire process of loading or unloading the insured vehicle from the time of commencement of such operation until its completion, and further that such coverage is afforded even though the injury took place away from the immediate vicinity of the insured vehicle. Also in Titan, the court expressly determined not to apply the actual use doctrine in cases of this type, but rather opted for the test under which coverage is found to exist if an accident would not have occurred but for the loading or unloading of the insured vehicle.
Here, the accident occurred between the time of commencement and conclusion of the loading and unloading of the insured vehicle, and the accident would not have occurred "but for" that operation; hence, by the Titan tests, coverage is afforded by the policy issued by plaintiff. Applying the same tests to the homeowner's policy issued by defendant leads to the conclusion that the exclusion clause for "loading and unloading" motor vehicle prevents that policy from applying to this situation.
Judgment affirmed.
COYTE and VAN CISE, JJ., concur.