**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 23 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ASPENWOOD INVESTMENT
COMPANY,

     Plaintiff-Appellant,

v.

MEL MARTINEZ, in his official capacity
as Secretary of the United States
Department of Housing and Urban
Development,

     Defendant-Appellee.

No. 01-1585

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 99-S-535)**

---

Nicholas W. Goluba, Jr. of Goluba & Goluba, P.C., Glenwood Springs, Colorado, for
Plaintiff-Appellant.

Kathleen L. Torres, Assistant United States Attorney (John W. Suthers, United States
Attorney, with her on the brief), Denver, Colorado, for the Defendant-Appellee.

---

Before **SEYMOUR, HOLLOWAY** and **EBEL**, Circuit Judges

---

**HOLLOWAY**, Circuit Judge.

---

Plaintiff/appellant Aspenwood Investment Company brought this action seeking a declaratory judgment that it was entitled to prepay a loan secured by real property and requesting injunctive relief to compel acts that would remove any obstacles to its prepayment. The defendant is the Secretary of the United States Department of Housing and Urban Development in his official capacity (hereinafter "HUD"). The complaint alleged that the district court had jurisdiction under 28 U.S.C. §§ 1331 & 1337 and that the United States had waived sovereign immunity pursuant to 12 U.S.C. § 1702. The defendant has not challenged the jurisdiction of the district court. Jurisdiction on appeal is granted by 28 U.S.C. § 1291.[1]

# I

*Overview*

Plaintiff is the owner of a housing project in Glenwood Springs, Colorado. Plaintiff holds the property subject to a deed of trust (which we will sometimes refer to as a mortgage for sake of simplicity, as the parties do). The loan that enabled plaintiff to purchase the property was insured and subsidized by HUD under section 236 of the National Housing Act, 12 U.S.C. § 1715z-1. In exchange for HUD's role in insuring the mortgage and making financing available at an advantageous rate, plaintiff agreed to

---

[1] The suit was originally filed against Andrew Cuomo, who was then Secretary of HUD. Mr. Martinez was substituted automatically under Fed. R. Civ. P. 25(d)(1).

certain conditions on its operation of the project which, for our purposes, concern its making up to eight of forty-two living units available to low income renters.[2] The parties' mutual obligations under the section 236 program are set out in a "Regulatory Agreement," which they executed in 1970.

In 1971 the parties entered into a Rent Supplement Contract under a program HUD administered pursuant to section 101 of the Housing and Urban Development Act of 1965, 12 U.S.C. § 1701s. The rent supplement program was a rental assistance program that subsidized the rental payments of participating low-income tenants. The Rent Supplement Contract specified the maximum amount of rent subsidy HUD would pay annually and the maximum number of units in the project that could be used for eligible tenants. This is, as plaintiff puts it, a tenant-based subsidy, and plaintiff is paid by HUD only while the tenant is actually residing in the project and only for the amount for which that tenant is qualified, based on the tenant's income. The last tenant for which HUD provided subsidy payments in plaintiff's project moved out in May 1997. Plaintiff has tried since that time to prepay the balance of its mortgage debt. Prepayment of the mortgage debt would terminate the Rent Supplement Contract and relieve plaintiff of further obligations to HUD under either the section 236 program or the Rent Supplement

---

[2]According to HUD's brief, a certain dollar amount was set in 1971 both by regulation and contract and was intended to cover up to 20% of the units in the project, *i.e.*, 8 of the 42. The specified amount increased only minimally over time while the rents charged increased significantly. As a result, at present there is funding only for one unit, or perhaps two, depending on factors including the income of any subsidized tenant(s).

Program.

The note includes "Rider A," which appears on a separate page but is incorporated by reference in the main body of the note. Defendant HUD does not dispute that Rider A is a part of the note. The prepayment terms of Rider A are essentially identical to those of the applicable regulation, 24 C.F.R. § 236.30 (1970). Under the terms of Rider A, the debtor (plaintiff) has the right to prepay the debt subject to three conditions: (1) that the debtor is a "limited dividend mortgagor;"[3] (2) that the debtor is not receiving payments under a rent supplement contract with HUD; and (3) that at least 20 years has passed since the final endorsement of the note. These three conditions are, for our purposes, essentially identical to the three conditions for prepayment without HUD approval set out in 24 C.F.R. § 236.30 (1970), which was in effect at the time the parties entered into their relationship.

Plaintiff's efforts to prepay were blocked by HUD, which asserted and continues to assert that the plaintiff is not entitled to prepay without HUD approval, which it will not give. Plaintiff then commenced this action.

**II**

*Proceedings in the District Court*

The parties filed cross-motions for judgment on the pleadings under Fed. R. Civ.

---

[3]The term "limited dividend mortgagor" is a term of art meaningful only in the context of the applicable statutes and regulations. Because the parties agree that the term applies to plaintiff, we need not dwell on the point.

P. 12(c), which were referred to a magistrate judge for a report and recommendation under the authority of 28 U.S.C. § 636(b)(1)(A-B) and Fed. R. Civ. P. 72(a-b). The parties agreed that plaintiff meets the first and third of the three conditions set out above to be entitled to prepay without HUD approval. Plaintiff argued in the district court that it was not "receiving payments" under the Rent Supplement Agreement and therefore had the right to prepay under the terms of the note and the regulations. It is undisputed that the last remaining tenant for which HUD provided assistance under the Rent Supplement Agreement moved out of the project in May 1997. Nevertheless, HUD maintained that plaintiff was "receiving payments" within the meaning of the applicable regulation as long as the Rent Supplement Agreement was in force and there was adequate funding for at least one low income tenant.

The magistrate judge recommended that the plaintiff's motion be denied and that the defendant's motion be granted. Plaintiff filed its objection to the magistrate judge's report and recommendation. On *de novo* review, the district court reached the same conclusion, and judgment was entered in favor of HUD. The district judge held that HUD was not a party to the note and that the parties' rights therefore were to be determined by the Rent Supplement Agreement, which provided in turn that the right to prepayment was governed by the applicable regulation, 24 C.F.R. § 236.30 (1970).

The judge noted that the language of the note and the regulation were essentially the same. Nevertheless, the decision that the regulation, rather than the note, controlled

was significant for the legal analysis because courts defer to an agency's interpretation of its own regulations. Applying this deferential standard, the district judge concluded that HUD's interpretation – that the plaintiff was "receiving" rent supplemental payments as long as the Rent Supplement Agreement was in effect and funding was available – was not plainly erroneous. We disagree for reasons given below.

**III**

*Analysis*

**A**

A decision by the district court granting a defense motion for judgment on the pleadings is reviewed *de novo*, using the same standard of review applicable to a Rule 12(b)(6) motion. *See McHenry v. Utah Valley Hospital*, 927 F.2d 1125, 1126 (10th Cir. 1991). Thus, all the well-pleaded allegations of the complaint are accepted as true and construed in the light most favorable to the plaintiff. *Ramirez v. Department of Corrections,* 222 F.3d 1238, 1240 (10th Cir. 2000). The complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-56 (1957)).

We must first decide whether plaintiff's prepayment rights are governed by the terms of the note or by the applicable agency regulation. The prepayment terms of the

note, set out in Rider A, are essentially identical to those of the applicable regulation, 24 C.F.R. § 236.30 (1970). Neither party suggests that any difference in wording is significant for this litigation. But the parties nevertheless vigorously disagree on whether plaintiff's effort to prepay the debt should be governed by the note or by the regulation.

The parties' dispute over this issue is motivated by the different standards by which federal courts review contracts drafted by an agency, on the one hand, and regulations promulgated by an agency on the other. Thus, HUD argues that it is not bound by the terms of the note because it was not in privity with plaintiff or the lender. Consequently, it argues, plaintiff's prepayment rights must turn on the validity of HUD's interpretation of its own regulation, to which federal courts owe considerable deference. *See, e.g., Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512-13 (1994). Plaintiff, on the other hand, argues that the dealings among the parties must be viewed as one unified transaction, and that from this perspective it is clear that HUD intended to be bound by the terms of the note. Therefore, plaintiff contends that ordinary rules of contract interpretation should guide our resolution of the parties' competing interpretations of the language.

HUD admitted in its answer that the promissory note, a modification to the note, the deed of trust, and the regulatory agreement all were in the form "required" by HUD, and that it prepared the rent supplement agreement. The regulatory agreement between plaintiff and HUD incorporates by reference the rent supplement agreement (even though

the later was not actually executed by the parties for some months thereafter).[4]  The deed of trust incorporates the regulatory agreement by reference.

In the Regulatory Agreement, HUD is given considerable control over tenant selection, setting of rents and other basic aspects of operations.  For example, plaintiff agreed to several provisions aimed at making sure that tenants on whose behalf supplemental payments were received were indeed eligible for the program such as by requiring certification of income of prospective tenants and written evidence to support the certification; agreed that having children would not be a disqualifying factor for prospective tenants (unless the project were one designed primarily for "elderly persons"); and agreed that rents would not be changed without approval of HUD.

The case most directly on point is *Cienega Gardens v. United States*, 194 F.3d 1231 (Fed. Cir. 1998), *reversing* 33 Fed. Cl. 196 (1995), in which a divided panel of the Federal Circuit decided this issue in favor of HUD.  We find the analysis of the dissent, which followed that of the Court of Federal Claims in the decision appealed from, more persuasive than that of the majority, however.  Paraphrasing from the Court of Federal Claims, as quoted in the dissent in the Federal Circuit,[5] we note that by executing the

---

[4]The plaintiff is not actually a party to any of these instruments.  Plaintiff obviously asserts rights as successor in interest to the maker of the note, Morton Graddis, and defendant just as clearly also treats plaintiff as having stepped into the shoes of the maker.  We need not be further concerned about this point.  References to plaintiff herein as if plaintiff had been a party to the contractual documents should be understood as referring to plaintiff's predecessor in interest.

[5]*See Cienega Gardens*, 194 F.3d at 1248 (dissent) (quoting from 33 Fed. Cl. at 210).

regulatory agreement, the note, and related documents, plaintiff promised to operate the housing project in accordance with HUD's requirements, to give priority in acceptance to tenants with low income, to limit rental rates as prescribed by HUD, and to accept limits on its allowed profits. These promises were primarily for the benefit of HUD (and the participants in the low income housing program), not for the lender.

In view of all of the relevant circumstances, we conclude and hold that the manifest intent of the parties was to enter into a transaction in which each part, as represented by the various documents, was an essential element of the whole; the meaning of each element can be understood only in the context of all of the other elements. In other words, there is a single, overarching agreement. We conclude that it was the demonstrated intent of HUD (and of plaintiff and of the lender) to be bound by the terms of all of the parts of the transaction.

Thus, we turn to the question of contract interpretation at the heart of this matter. The dispute now comes to focus solely on the meaning of the words "is not receiving payments . . . under a rent supplement contract" in Rider A. We find the term is not ambiguous but has a plain and ordinary meaning, which is the interpretation we must follow. Plaintiff had no subsidized tenant after May 1997 and promptly sought to prepay the mortgage debt at that time. Plaintiff has not received payments under the Rent Supplement Contract since that date. Hence, plaintiff is not "receiving" payments.

Defendant contends that the words "is not receiving payments . . . under a rent

supplement contract" should be construed to mean that the debtor "is not a party to a rent supplement contract for which adequate funding from HUD is available, so that upon the event of an eligible tenant commencing to reside in the project, payments under the rent supplement contract would be made" or something to like effect. This would torture the actual language of the contract, which is quite clear. We therefore must and do reject this argument.

**B**

Even if we were to agree with HUD that the regulation, rather than the terms of Rider A, should control, we would reach the same result. An agency's interpretation of its own regulations should be upheld unless it is plainly erroneous or inconsistent with the regulation. *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512-13 (1994). Accordingly, the courts must defer to an agency's interpretation unless an alternative reading is compelled by the plain language of the regulation or by other indications of the agency's intent at the time the regulation is promulgated. *Id.*

Even viewing the issue in this deferential light, however, we are unable to sustain HUD's reading of the regulation. As with our analysis of the terms of Rider A, *supra*, this issue turns on the meaning of the words "is not receiving payments," as used in the regulation. This phrase is not ambiguous, as HUD contends, but rather is plain, simple and easily understood.

We find that an alternative interpretation is compelled by the plain language of the regulation. The fact that if plaintiff were to forego prepayment of the mortgage debt, a suitable tenant might appear and plaintiff might again, at that future point, receive payments under the rent supplement contract does not mean that plaintiff *is receiving* payments. The plain language of the regulation does not permit HUD's interpretation, and we reject the invitation to disfigure the language in order to achieve such a result. Our deference to HUD's interpretation of its regulation has limits. As we said on another occasion, the agency's interpretation here "conflicts with a common-sense reading of the language." *Resolution Trust Corp. v. FSLIC*, 25 F.3d 1493, 1500 (10th Cir. 1994). The agency could easily have drafted language to achieve the result which it now advocates but did not do so. "We cannot torture the language" to reach the result the agency wishes. *Id*.

## Conclusion

We reverse the judgment of the district court and remand for further proceedings consistent with this decision. We decline plaintiff's invitation to decide the "unclean hands" defense raised by HUD, which may be considered by the district court.

**IT IS SO ORDERED.**