**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 30, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LANDMARK AMERICAN
INSURANCE COMPANY,

Plaintiff - Appellee,

v.

VO REMARKETING CORP.; KAYE
LAURA TIBBE,

Defendants - Appellants.

No. 14-1270
(D.C. No. 1:13-CV-01386-WJM-KMT)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **EBEL**, and **LUCERO**, Circuit Judges.

---

Plaintiff-Appellee Landmark American Insurance Company brought this

declaratory judgment action seeking a determination that it had no duty to defend

or indemnify its insured, Defendant-Appellant VO Remarketing Corp (VO), in a

lawsuit brought in Colorado state court. The district court granted Landmark's

motion for judgment on the pleadings, Fed. R. Civ. P. 12(c), and VO, along with

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Defendant-Appellant Kaye Laura Tibbe, appeals.[1]  Exercising jurisdiction under

28 U.S.C. § 1291, we affirm.


Background

A.    The Injury and Underlying Lawsuit

This case arises out of an accident that occurred on November 2, 2012, as

two VO employees attempted to maneuver a Stairmaster exercise machine to the

second-story loft of Kaye Laura Tibbe's home.  Ms. Tibbe had purchased the

Stairmaster from VO and arranged for its delivery.  As the two VO employees

were maneuvering the Stairmaster up the stairs to the loft, they lost control of the

machine, causing it to tumble down the stairs.  Ms. Tibbe, who was standing at a

lower point along the stairway, was crushed by the Stairmaster and sustained

serious injuries as a result.

At the time of the accident, VO held a Commercial General Liability (CGL)

policy through Landmark (the Policy).  The Policy obligates Landmark to

indemnify VO for "sums that the insured becomes legally obligated to pay as

damages because of 'bodily injury' or 'property damage' to which this insurance

applies."  1 Aplt. App. 198.  Landmark must also defend VO in "suits" seeking

such damages.  Id.

---

[1]  For convenience, we refer to both of the Defendant-Appellants as "VO."

The Policy contains various exclusions, one of which is at the center of this case. In pertinent part, coverage under the Policy does not apply to bodily injury or property damage "arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading or unloading.'" Id. at 201 (emphasis added) (hereinafter, the Auto Exclusion). "Loading or unloading" means:

> [T]he handling of property:
>
> . . .
>
> > (c) While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;
> >
> > but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

Id. at 211.

Following the accident, Landmark received notice of a claim made by Ms. Tibbe against VO. Landmark hired a third party to investigate the claim and, based on the results of that investigation, determined that the Policy's Auto Exclusion precluded coverage for Ms. Tibbe's injuries. In short, Landmark determined that the Stairmaster had not reached its place of final delivery when the accident occurred and therefore the process of "unloading" was ongoing. Landmark notified VO by letter on March 8, 2013 that there was no coverage or

-3-

potential coverage under the Policy and that it would not be providing a defense.

2 Aplt. App. 396–97.

About a month later, on April 10, 2013, Ms. Tibbe filed a lawsuit against

VO in Colorado state court. 1 Aplt. App. 175–82 (hereinafter, the Underlying

Lawsuit). Ms. Tibbe sought damages resulting from VO's alleged negligence. As

relevant here, her complaint alleged:

> 1. This action against VO arises out of the personal injury and
> property damage sustained by Tibbe, on or about November 2, 2012,
> at her residence in Greeley, Colorado. After VO delivered a "Step
> Mill 7000 PT Stairmaster" and the equipment was inside of Tibbe's
> residence, VO attempted to maneuver the equipment up the stairs of
> the residence. The equipment crashed down the stairs of the
> residence and crushed Tibbe.
>
> . . .
>
> 8. After the [Stairmaster] was delivered and inside of Tibbe's
> Residence, two employees of VO attempted to maneuver the
> [Stairmaster] to the second story loft of Tibbe's Residence. At the
> crest of the stairs VO's employees and/or agents lost control of the
> [Stairmaster] and it cascaded down the flight of stairs and crushed
> Tibbe against the exterior wall of the vestibule of the Residence.
>
> . . .
>
> 17. On or about November 2, 2012, after the [Stairmaster] was
> delivered and inside of Tibbe's Residence, the Defendant negligently
> attempted to maneuver the [Stairmaster] to the second story loft of
> Tibbe's Residence, causing property damage and the Plaintiff's
> injuries.

Id. at 175–77.

After examining the complaint, Landmark again notified VO that it would

not be providing a defense. Subsequently, Ms. Tibbe and VO entered into a settlement agreement pursuant to which a neutral arbiter would decide the issue of damages. An Arbitration Decision and Award was entered against VO and in favor of Ms. Tibbe for approximately $1.2 million, and a state court later entered judgment against VO pursuant to the settlement agreement. Also as part of the settlement agreement, Ms. Tibbe agreed not to execute on the judgment against VO and, in return, VO assigned Ms. Tibbe its claims for breach of contract and bad faith breach of an insurance contract against Landmark.

B.      The Declaratory Judgment Action

On May 29, 2013, Landmark filed the instant action seeking a declaration that it has no duty to defend or indemnify VO in the Underlying Lawsuit. 1 Aplt. App. 11–18.

Landmark's complaint contained a number of factual allegations not contained in Ms. Tibbe's complaint. Among other things, Landmark alleged (1) VO used a vehicle to transport the Stairmaster to Ms. Tibbe's residence and (2) Ms. Tibbe "requested that VO REMARKETING deliver the Stairmaster to the second story loft of her residence." Id. at 14. VO admitted the first of these allegations and, as to the second, admitted only that "its employees delivered the Stairmaster into Tibbe's residence and that after the Stairmaster was inside of the residence, two employees of VO attempted to maneuver the Stairmaster to the second story loft of Tibbe's residence." Id. at 21–22. Along with its answer, VO

-5-

asserted counterclaims against Landmark for breach of contract, bad faith breach of an insurance contract, and statutory violations under Colorado law.

Landmark later filed its Rule 12(c) motion for judgment on the pleadings, arguing that the Auto Exclusion barred coverage for the claims asserted by Ms. Tibbe. Id. at 54–55. Specifically, Landmark contended that the Stairmaster had not reached its place of final delivery under both the plain language of the Policy and Colorado's "complete operation" doctrine; thus, the process of "unloading" was not yet complete when the accident occurred. VO opposed the motion and later, in May 2014, filed a motion to amend its counterclaims.

On June 13, 2014, the district court granted Landmark's motion for judgment on the pleadings. Landmark Am. Ins. Co. v. VO Remarketing Corp., No. 13–cv–1386–WJM–KMT, 2014 WL 2673593 (D. Colo. June 13, 2014). The court rejected VO's argument that the phrase "loading or unloading" was ambiguous and must be construed in VO's favor. Thereafter, citing the Policy's language and the "complete operation" doctrine, the court agreed with Landmark that "the accident occurred before the conclusion of the loading and unloading" of VO's vehicle. Id. at *4. There being no disputed issues of material fact, the court held that Landmark had no duty to defend or indemnify VO. Additionally, and because Landmark had no duty to defend or indemnify VO, the court dismissed VO's counterclaims and denied its motion to amend those claims. Id. at *4–5. VO challenges both decisions.

## Discussion

We review de novo the district court's decision to grant a motion under Fed. R. Civ. P. 12(c). Aspenwood Inv. Co. v. Martinez, 355 F.3d 1256, 1259 (10th Cir. 2004). A motion under Rule 12(c) is reviewed under the same standard applicable to a motion under Rule 12(b)(6). Id. Thus, we "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." Colony Ins. Co. v. Burke, 698 F.3d 1222, 1228 (10th Cir. 2012) (internal quotation marks and citation omitted). Granting a motion for judgment on the pleadings requires the movant to establish an absence of any issue of material fact and entitlement to judgment as a matter of law. Id.

A.    Applicable Law

1.    Duty to Defend and the Complaint Rule

Under Colorado law, the duty to defend is broader than the duty to indemnify. Hecla Mining Co. v. N.H. Ins. Co., 811 P.2d 1083, 1089 (Colo. 1991) (en banc). The former duty "arises when the underlying complaint . . . alleges any facts that might fall within the coverage of the policy." Id. An insurer seeking to defeat the duty to defend "bears the burden of establishing that the allegations in the complaint are solely and entirely within the exclusions in the insurance policy and that any exceptions to the exclusions do not restore coverage." Cotter Corp. v. Am. Empire Surplus Lines Ins. Co., 90 P.3d 814, 829 (Colo. 2004) (en banc) (internal quotation marks and citation omitted). In other

words, the "insurer must establish that there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." Id. (internal quotation marks omitted).

"[W]hen an insurer refuses to defend its insured, the determination of the insurer's duty to defend is separate from the determination of the duty to indemnify, and is based solely on factual allegations contained in the underlying complaint." Id. at 827. Instead of incentivizing insurers to litigate the duty to defend, the "complaint rule" encourages insurers to provide a defense up front and later seek reimbursement, should it turn out that no coverage exists. Hecla, 811 P.2d at 1089. The strictness of the rule also promotes other policies. First, "it protects an insured's reasonable expectation of a defense." Cotter, 90 P.3d at 828; see Pompa v. Am. Family Mut. Ins. Co., 520 F.3d 1139, 1146 (10th Cir. 2008) ("That is, the insured should not have to bear the burden of advancing the costs of defense just because there is a possibility that future developments in the case will establish that there is no insurance coverage."). Second, it "prevents the insurer from evading coverage by filing a declaratory judgment action when the complaint against the insured is framed in terms of liability coverage contemplated by the insurance policy." Hecla, 811 P.2d at 1090. In this way, it "prevents the insured's defense in the underlying action from being compromised by a declaratory-judgment action," because the insured may be forced "to produce evidence in the declaratory-judgment action that would subject it to liability in

the underlying action." Pompa, 520 F.3d at 1146.

The insurer gets the benefit of a more lenient rule, however, when it provides a defense under a reservation of rights and later seeks reimbursement should it turn out there was no coverage. Cotter, 90 P.3d at 827 (citing Hecla, 811 P.2d at 1089). Under those circumstances, Colorado courts "allow[] insurers . . . to rely on facts outside of the complaint to determine whether they could recover costs of defense from the insured." Id.

2.      Pompa Exception

"[T]his court has twice predicted that the Colorado Supreme Court would recognize narrow exceptions to [the complaint] rule." United Fire & Cas. Co. v. Boulder Plaza Residential, LLC, 633 F.3d 951, 960 (10th Cir. 2011) (citing AIMCO v. Nutmeg Ins. Co., 593 F.3d 1188 (10th Cir. 2010), and Pompa, 520 F.3d 1139). Only the Pompa exception is relevant in this appeal.

In Pompa, the insured caused the death of another man and later pleaded guilty to criminally negligent homicide. 520 F.3d at 1141. The decedent's heirs subsequently named the insured, Mr. Pompa, as the defendant in a wrongful death action. Id. Mr. Pompa tendered the defense to his homeowner's insurer, AFM. Id. AFM refused to defend, however, citing the criminal-conviction exclusion in Mr. Pompa's policy. Id. In Mr. Pompa's subsequent suit against AFM, he argued the complaint rule "precluded the court [and AFM] from considering his conviction for negligent homicide because the wrongful-death complaint did not

allege that he had been convicted of any crime." Id. at 1142.

After noting Colorado's adherence to the complaint rule and the policy reasons for doing so, we observed that a number of courts and commentators recognized certain exceptions to the complaint rule:

> One widely recognized exception states that an insurer should not have a duty to defend an insured when the facts alleged in the complaint ostensibly bring the case within the policy's coverage, but other facts that are not reflected in the complaint and are unrelated to the merits of the plaintiff's action plainly take the case outside the policy coverage.

Id. at 1147 (internal quotation marks and citation omitted).

While this exception had not been adopted by the Colorado Supreme Court, we expressed our view that it would embrace such an exception if faced with similar facts, so long as the policy reasons behind the complaint rule were not undermined. Id.; see United Fire, 633 F.3d at 960. We concluded that we could consider Mr. Pompa's conviction, a fact extrinsic to the underlying complaint, because it was "an indisputable fact that is not an element of either the cause of action or a defense in the underlying litigation." Pompa, 520 F.3d at 1147. Importantly, we found that consideration of this fact would neither defeat Mr. Pompa's "legitimate expectations of . . . a defense," nor prejudice his defense in the underlying wrongful death suit. Id. at 1147–48. With respect to Mr. Pompa's expectation of a defense, we noted that "an insured can have no reasonable expectation of a defense when an indisputable fact, known to all parties, removes

-10-

the act in question from coverage." Id. at 1148.

More recently, in United Fire, we refused to broaden the scope of the exceptions to the complaint rule. Noting that neither the Colorado Supreme Court nor lower Colorado courts had ratified either of the exceptions recognized by this court, we concluded that further expansion of those exceptions was unwarranted. United Fire, 633 F.3d at 961. We therefore rejected a party's request to expand the exceptions "to include consideration of extrinsic evidence not necessarily contained in another complaint, as long as the insurer had knowledge of such evidence when it denied coverage." Id. (internal quotation marks omitted).

B.    Analysis

1.    Landmark's Motion for Judgment on the Pleadings

This case turns on whether Landmark can establish, within the limitations of Colorado law, that the Policy's Auto Exclusion precludes coverage for Ms. Tibbe's injuries. This, in turn, requires Landmark to establish that the unloading process was not complete at the time of the accident, because the Stairmaster was being "moved from an . . . 'auto' to the place where it [was to be] finally delivered."

The district court concluded that Landmark met its burden of establishing that the Stairmaster had not been finally delivered when the accident occurred. In reaching this conclusion, it relied on the fact that "Tibbe requested that the VO employees deliver the Stairmaster to her second story loft." Landmark, 2014 WL

-11-

2673593, at \*4.  Additionally, the court relied on the "uncontested fact . . . that VO had not finished handling the Stairmaster at the time of the [a]ccident."  Id. The court then considered these facts in light of Colorado's "complete operation" doctrine, which holds that "unloading" "embraces the entire process involved in the movement of goods from the time they are given in to the insured's possession until the insured has completed delivery thereof."  Titan Constr. Co. v. Nolf, 515 P.2d 1123, 1125 (Colo. 1973) (en banc) (emphasis added).  In the district court's view, no genuine issue of material fact existed because, when applied to the facts above, the "complete operation" doctrine required a finding that delivery was not yet complete when the accident occurred.

VO challenges the district court's conclusion on a number of grounds.  Its primary argument is that the district court failed to faithfully apply the complaint rule.  VO contends that, when the allegations of the underlying complaint are taken as true, and only those allegations are considered, Landmark cannot prove application of the Auto Exclusion.  Aplt. Br. 16.  Further, VO contends that the district court's application of the "complete operation" doctrine was inconsistent with Colorado precedent.  Finally, VO argues that the phrase "loading or unloading" is ambiguous and therefore must be construed in its favor.  We address each argument below, keeping in mind that the facts must be construed in the light most favorable to VO, and Landmark bears the burden of establishing the Auto Exclusion's application.

Neither party disputes that Landmark, because it refused to defend in the Underlying Lawsuit, is bound by the facts alleged in the underlying complaint. Seizing on this limitation, VO contends there are insufficient facts in Ms. Tibbe's complaint to establish the applicability of the Auto Exclusion, even under the "complete operation" doctrine. First, VO argues that the underlying complaint does not even allege the use of an "auto," and therefore that element of the exclusion cannot be shown. Second, and more important, VO contends that the factual allegations do not establish that delivery was still in progress at the time of the accident.

VO's first argument—that the district court improperly looked outside of the complaint to determine that an "auto" was used—fails for two reasons. As an initial matter, VO forfeited this argument by failing to properly raise it in the district court. Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1127–28 (10th Cir. 2011). The first, and only, time VO mentioned this argument was in a single sentence in its reply brief in support of its motion to amend counterclaims. VO never raised this argument in response to Landmark's Rule 12(c) motion and, in any event, has made no attempt to demonstrate plain error. See id.

That being said, because it is Landmark's burden to establish that the Auto Exclusion applies, we note that even if this argument was properly before us, it would fail. In Landmark's complaint, it alleged that VO used a vehicle to transport the Stairmaster to Ms. Tibbe's home, and VO admitted that fact in its

-13-

answer. For that matter, VO has never disputed that it used a vehicle to transport the Stairmaster. It is clear to us, then, that the fact of VO's automobile use is "an indisputable fact that is not an element of either the cause of action or a defense in the underlying litigation," falling clearly within the Pompa exception. 520 F.3d at 1147. The district court's consideration of this fact does not disturb any reasonable expectation of a defense because VO—as operator of the vehicle—would have known that the Auto Exclusion might apply. Additionally, VO's defense in the Underlying Lawsuit is not prejudiced by consideration of this fact because the use of an automobile has no bearing on the merits of Ms. Tibbe's negligence claims. Thus, although the underlying complaint did not allege the use of an automobile, the Pompa exception permitted the district court to look outside the four corners of the complaint.[2]

VO next argues that when the allegations in the underlying complaint are taken as true, Landmark cannot establish that delivery was still in progress when the accident occurred. At a minimum, VO says, the facts in the complaint are insufficient—even when coupled with the "complete operation" doctrine—to

---

[2] We acknowledge, as VO points out, that no Colorado court has recognized or ratified the exception we embraced in Pompa. See United Fire, 633 F.3d at 961 (making same observation). However, unless and until some Colorado authority disavows our holding in Pompa, we think the prudent course is to continue to apply the exception in the narrow circumstances where it fits and exercise caution when it comes to expanding this exception (as we did in United Fire). In short, we reject VO's contention that "the continued vitality of Pompa is questionable in light of United Fire." Aplt. Rep. Br. 15.

establish that delivery was in progress. We disagree.

VO places much emphasis on the fact that Ms. Tibbe's complaint repeatedly alleged that the Stairmaster had already been "delivered" when the VO employees began to carry it up the stairs. Indeed, Ms. Tibbe's complaint alleges three times that VO's employees attempted to maneuver the Stairmaster up the stairs after the equipment "had been delivered." In VO's view, the district court was required to accept this "factual allegation" and, had it done so, there would have been no basis to conclude that delivery was ongoing. But VO's argument is mistaken. A court determining whether an insurer's duty to defend has been triggered must accept as true all facts alleged in the underlying complaint. Cotter, 90 P.3d at 828; Hecla, 811 P.2d at 1089. The same is not true of legal conclusions. See Carolina Cas. Ins. Co. v. Pinnacol Assurance, 425 F.3d 921, 929 (10th Cir. 2005) ("The facts alleged in a complaint, not the complaint's legal characterization of those facts, ordinarily control coverage."); Gerrity Co. v. Cigna Prop. & Cas. Ins. Co., 860 P.2d 606, 608 (Colo. App. 1993). Here, the district court's task was to compare the complaint's factual allegations against the Auto Exclusion to determine whether those facts fell within the exclusion. A complaint's bare legal conclusions cannot and do not take that task away from the court.

We also reject VO's assertion that there were insufficient facts in the complaint upon which the district court could conclude that delivery had not yet

-15-

been completed. VO raises two points: (1) the district court improperly relied on extrinsic evidence to determine that Ms. Tibbe requested the Stairmaster be delivered to the second-story loft; and (2) the underlying complaint contains no allegations regarding the terms of delivery, the parties' understanding of those terms, or whether delivery and installation were separately negotiated, as two distinct services. Aplt. Br. 15–17. We need not address whether it was proper for the district court to consider extrinsic evidence concerning Ms. Tibbe's request, however, because we believe the complaint alleges sufficient facts to establish that delivery was not yet complete under the "complete operation" doctrine.

In Titan Construction Co. v. Nolf, 515 P.2d 1123, 1125 (Colo. 1973) (en banc), the Colorado Supreme court adopted the "complete operation" doctrine. As a functional matter, the rule operates to demarcate the point at which coverage under an automobile policy ends and coverage under a general liability policy begins. This is so because, as the cases illustrate, automobile policies usually include coverage for damages arising out of accidents that occur during the course of the "loading or unloading" of a vehicle, while general liability policies most often exclude coverage for damages arising out of the "loading or unloading" of a vehicle. Thus, to determine whether there is coverage under an automobile policy, the inquiry under Colorado law is whether the accident occurred "during the entire process of loading or unloading the insured vehicle from the time of commencement of such operation until its completion." Colo. Farm Bureau Mut.

-16-

Ins. Co. v. W. Am. Ins. Co., 540 P.2d 1112, 1114 (Colo. App. 1975); see Titan, 515 P.2d at 1125. Significantly, the Colorado Supreme Court adopted this approach over a different unloading doctrine, the "coming to rest" doctrine. Titan, 515 P.2d at 1125. Under that doctrine, "'unloading' comprises only the actual removing or lifting of the article from the loaded vehicle to the moment when it again comes to rest." Id.

Here, the Policy's definition of "loading or unloading" includes "the handling of property . . . [w]hile it is being moved from an . . . 'auto' to the place where it is finally delivered." 1 Aplt. App. 211. This is, in essence, an express codification of the "complete operation" doctrine. Our inquiry, therefore, is the same under either the Policy's plain language or the "complete operation" doctrine. And in this case, the facts alleged in the underlying complaint establish that the "operation" of unloading was not complete at the time VO's employees lost control of the Stairmaster. The complaint's legal conclusions aside, the facts show that VO brought a Stairmaster to Ms. Tibbe's home and then began the process of maneuvering the Stairmaster to the second-story loft. It is also clear that two VO employees were in the process of handling the Stairmaster when they lost control of it, injuring Ms. Tibbe. On these facts, we agree with Landmark that the complaint's factual allegations contradict its mere legal conclusion that the Stairmaster reached the "place where it is finally delivered." Under both the plain language of the Policy and the "complete operation" doctrine, the process of

unloading was not complete at the time the accident occurred because VO had not "completed delivery thereof." Titan, 515 P.2d at 1125.

VO contends, however, that the complaint lacks sufficient information upon which the district court or this court could conclude that delivery was not yet complete at the time of the accident. Specifically, VO argues that the complaint was silent as to the terms of delivery, the parties' intent with regard to delivery, or even the potential existence of a separate installation agreement. But merely asserting the hypothetical existence of certain facts is insufficient to overcome a motion for judgment on the pleadings. Once Landmark satisfied its burden under Rule 12(c), it was incumbent on VO to point to something that tended to show an actual dispute of fact. Perhaps VO could have accomplished that by alleging, in response to Landmark's complaint, the existence of a separate agreement or a VO policy of delivering only to the front door. Instead of doing so, however, VO either admitted all of Landmark's material allegations or countered with the same legal conclusion asserted in the underlying complaint. Thus, as we explained just above, there were sufficient facts on which the district court could conclude that delivery was still in progress, and VO did nothing to counter that conclusion.

We also find no merit in VO's remaining arguments. The gravamen of VO's next argument is that the "complete operation" doctrine is only used to expand coverage, not to foreclose it. While some cases, like Titan, have applied the doctrine to afford coverage under an automobile insurance policy, the

-18-

doctrine's role is not to blindly expand insurance coverage in every occasion. As explained above, the doctrine distinguishes between coverage under an auto policy and coverage under a general liability policy. For example, in Colorado Farm Bureau, application of the doctrine meant that coverage was afforded under the insured's auto policy but, by virtue of that finding, coverage was excluded under the "loading and unloading" clause of the insured's homeowner's policy. 540 P.2d at 1114.

Finally, we reject VO's argument that the phrase "loading or unloading" is ambiguous and therefore must be construed in its favor. First, Colorado's adoption of the "complete operation" doctrine—borne of an interpretation of "loading or unloading"—functions to negate any ambiguity that might have otherwise existed in the phrase. Indeed, none of Colorado's "complete operation" cases that have addressed that phrase have suggested that it is ambiguous.[3] Second, the Policy further defines "loading or unloading" to include "the handling

_____

[3] Although agreeing that "our unloading inquiry is the same under either the Policy's definition of 'loading or unloading' or the 'complete operation' doctrine," the dissent criticizes our conclusion that the "complete operation" doctrine negates any ambiguity that might have otherwise existed in Policy's relevant language. But the rule is the product of the Colorado Supreme Court's interpretation of the phrase "loading or unloading," see Titan, 515 P.2d at 1125, and it would be strange indeed to conclude that the interpretation itself is ambiguous. Moreover, the phrase ought to applied in a functional manner, rather than by seeking ambiguities. This functional approach is warranted by the rule, which clearly embraces "the entire process of loading or unloading . . . from the time of commencement of such operation until its completion." Colorado Farm Bureau, 540 P.2d at 1114.

of property . . . [w]hile it is being moved from an aircraft, watercraft or 'auto' to the place where it is finally delivered." 1 Aplt. App. 211. Common definitions of "final" include "coming at the end," "being the last in a series, process, or progress," and "of or relating to the ultimate purpose or result of a process." Final, Merriam Webster Online Dictionary, http://www.merriam-webster.com/dictionary/final (last visited June 10, 2015). These definitions comport with the common understanding of the word "final," an understanding that is inconsistent with VO's theory of ambiguity.

Accordingly, we agree with the district court that Landmark was entitled to judgment on the pleadings.[4]

2. Dismissal of VO's Counterclaims & Denial of Motion to Amend

The district court also dismissed VO's counterclaims against Landmark for breach of contract, bad faith breach of an insurance contract, and violations of Colorado statute. It similarly denied VO's motion to amend those counterclaims. The court reasoned that, because there was no duty to defend or indemnify, Landmark could not have breached its contractual obligations or acted in bad

---

[4] The dissent concedes that its alternative ground for reversing the district court—that there was no casual connection between the use of an auto and Ms. Tibbe's injuries—was not raised in either the district court or on appeal. Of course, arguments not raised below ordinarily will not be addressed in the first instance on appeal. Richison, 634 F.3d 1123, 1127–28 (10th Cir. 2011). Moreover, a party is responsible for establishing plain error in such circumstances. Id. at 1128. Suffice it to say that we find no special circumstances that would warrant an exception to these rules.

-20-

faith. Landmark, 2014 WL 2673593, at *5 (citing Berry & Murphy, P.C. v. Carolina Cas. Ins. Co., 586 F.3d 803, 815 (10th Cir. 2009)).

VO's sole argument here is that, should this court reverse the district court on the Rule 12(c) motion, it should also reverse on the amendment issue. Aplt. Br. 25. Because we now affirm the district court's decision to grant Landmark's motion for judgment on the pleadings, we also affirm its decisions to dismiss VO's counterclaims and deny its motion to amend such claims.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

Landmark Ins. v. VO Remarketing, No. 14-1270

**EBEL**, J., dissenting

I agree with the majority in many respects. For instance, I agree that this case turns on whether Landmark can establish that the Policy's auto exclusion applies—i.e., whether Landmark can establish that the unloading process was *not* complete at the time of the accident because the Stairmaster was still "being moved from . . . an 'auto' to the place where it [was to be] finally delivered." Maj. Order 11. I also agree that the district court did not violate the complaint rule, id. at 13–15, that Colorado's "complete operation" doctrine is not limited to cases where its application would expand coverage, id. at 18–19, and that our unloading inquiry is the same under either the Policy's definition of "loading or unloading" or the "complete operation" doctrine, id. at 17.

Despite these many points of agreement, I nonetheless write separately because I disagree with the majority's dispositive conclusion that Landmark met its burden of establishing that the allegations in Ms. Tibbe's underlying complaint are solely and entirely within the auto exclusion because the unloading process was not complete at the time of the accident. Id. at 16–18. Unlike the majority, I think Landmark failed to establish that Ms. Tibbe's injuries fall exclusively within the auto exclusion because the terms "place" and "finally delivered"—which appear in the Policy's definition of "loading or unloading"—are ambiguous and therefore must be construed in favor of VO. 1 Aplt. App. 211. When so construed, it is possible that the unloading process was complete at the time of Ms. Tibbe's accident, which would render the Policy's auto

exclusion inapplicable. Because the mere possibility of coverage is sufficient to defeat Landmark's motion for judgment on the pleadings, I would reverse on this basis alone.

However, even if the unloading process was not complete at the time of the accident, as the majority concludes, I think reversal is warranted for yet another reason— i.e., the absence of a causal relationship between VO's "use" of an auto and Ms. Tibbe's injuries. For the Policy's auto exclusion to apply, Landmark must demonstrate not only that an auto was in "use" in the sense that the unloading process was not complete, but also that Ms. Tibbe's injuries "ar[ose] out of" that use. Id. at 201. To satisfy this causation standard under Colorado law, Landmark must demonstrate *both* a "but for" connection between the use of an auto and Ms. Tibbe's injuries, *and* an unbroken causal chain between the use and the injuries. In my view, VO's attempt to maneuver the Stairmaster up the stairs of Ms. Tibbe's home broke the causal chain, rendering the Policy's auto exclusion inapplicable. Accordingly, I would reverse for the additional reason that causation is lacking.

## I. Discussion

At the highest level of generality, this appeal is about whether the district court correctly concluded that Landmark—an insurer—is entitled to judgment on the pleadings. We review the district court's grant of a motion for judgment on the pleadings de novo, accepting "all facts pleaded by the non-moving party as true and grant[ing] all reasonable inferences from the pleadings in favor of the same." Colony Ins. Co. v. Burke, 698 F.3d 1222, 1228 (10th Cir. 2012). "A motion for judgment on the pleadings should not be granted unless the moving party has clearly established that no material

2

issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Id. (internal citations and quotation marks omitted).

Importantly, in determining whether Landmark, as the moving party, is entitled to judgment as a matter of law, we must take into account the "heavy burden" that Landmark bears under Colorado law as an insurer seeking to avoid its duty to defend. United Fire & Cas. Co. v. Boulder Plaza Residential, LLC, 633 F.3d 951, 957 (10th Cir. 2011) (quoting Hecla Min. Co. v. N.H. Ins. Co., 811 P.2d 1083, 1089 (Colo. 1991)). As we have previously explained, the "actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend." Id. Rather, the "insurer has a duty to defend unless *the insurer* can establish that the allegations in the [underlying] complaint are *solely and entirely* within the exclusions in the insurance policy." Id. (emphasis added).

Thus, Landmark is not excused from its duty to defend VO—and therefore is not entitled to judgment on the pleadings—unless Landmark can establish that "there is *no factual or legal basis*" upon which it "*might* eventually be held liable to indemnify" VO. Id. (emphasis added) (further explaining that an insurer must accept the defense of a claim when the underlying complaint against the insurer alleges *any facts* that *might* fall within the coverage of the policy). Unlike the majority, I believe that Landmark failed to establish that the allegations in Ms. Tibbe's complaint fall exclusively within the auto exclusion for two reasons, either one of which warrants reversal.

3

**a. In light of the factual allegations in Ms. Tibbe's underlying complaint, it is possible that the unloading process was complete at the time of the accident because the Policy's terms "place" and "finally delivered" are susceptible to more than one reasonable interpretation.**

In order for Landmark to meet its burden of establishing that the allegations in Ms. Tibbe's underlying complaint fall exclusively within the auto exclusion, Landmark must establish that, among other things, see infra 7–8, an auto was in "use" *at the time of the accident*. This requirement flows directly from the language of the Policy, which provides that Landmark has no duty to defend VO against suits seeking damages for bodily injury or property damage "arising out of" the "use" of any "auto" operated by any insured. 1 Aplt. App. 201. The Policy defines "use" to include "loading or unloading," and it further defines "loading or unloading" to include "the handling" of property . . . [w]hile it is being moved from an . . . 'auto' to the place where it is finally delivered." Id. at 201, 211. The Policy does not define "place" or "finally delivered."

Emphasizing that Ms. Tibbe's underlying complaint alleged that the VO employees "were in the process of handling the Stairmaster when they lost control of it," the majority concludes that "the process of unloading was not complete at the time of the accident" because "VO had not completed delivery" of the machine. Maj. Order 17–18 (internal quotation marks omitted). The problem with this analysis, however, is that it improperly assumes the process of unloading the Stairmaster was necessarily not complete so long as the machine was being handled by VO. Such an assumption, however, fails to address the Policy's definition of "loading or unloading," which treats "the handling of property" as a condition precedent that triggers the definition of "loading

4

or unloading" *if* such handling also occurs "*While* [the property] is being moved from an . . . 'auto' to the place where it is finally delivered."  1 Aplt. App. 211 (emphasis added).

Thus, to conclude, as the majority does, that the unloading process was not complete at the time of the accident, VO's handling of the Stairmaster must have occurred *before* the machine reached the "place" where it was to be "finally delivered." To determine whether VO's handling occurred in this way, we must construe the meaning of the terms "place" and "finally delivered," which are not defined in the Policy. See Cotter Corp. v. Am. Empire Surplus Lines Ins. Co., 90 P.3d 814, 819–20 (Colo. 2004) (explaining that courts apply principles of contract interpretation when construing insurance policies and specifying that where, as here, there is no evidence that the parties intended something different at the time of drafting, courts should give words their plain and ordinary meaning).

Webster's defines "**place**" to mean a "specific locality," Webster's Third International Dictionary 1727 (3d. ed. 1986), and "locality" is itself defined as "a particular spot, situation, or location."  Id. at 1327.  Webster's further defines "**finally**" to mean "the last act or occurrence in a series," id. at 851, and "**deliver**" to mean "give, transfer: yield possession or control of," id. at 597.  "Control" is itself defined as "have power over" or "power or authority to guide or manage."  Id. at 496.  Reading these definitions together and in the context of this case, the terms "place" and "finally

5

delivered" are ambiguous because they are susceptible to more than one reasonable interpretation.[1] See Hecla, 811 P.2d at 1091.

On the one hand, these terms could reasonably be understood to mean that the process of unloading the Stairmaster *was not* complete at the time of the accident because: (1) the machine fell before it reached the second-story loft of Ms. Tibbe's home, the "specific locality" or "particular spot" to which the machine was to be finally delivered; and (2) VO had physical "power over" the machine immediately before it fell, meaning that VO had not yet yielded control of the machine. On the other hand, however, these terms could also reasonably be understood to mean that the process of unloading the Stairmaster *was* complete at the time of the accident because: (1) the machine fell after arriving inside Ms. Tibbe's home, the "particular location" to which

---

[1] The majority reaches the opposite conclusion, emphasizing that (1) the mere existence of the "complete operation" doctrine "functions to negate any ambiguity that might have otherwise existed in the phrase," and (2) common definitions of "final" comport with "the common understanding of the word 'final.'" Maj. Order 19–20, 19 n.3. I find both of these points unpersuasive. With respect to the first point, although the majority accurately notes that the Colorado Supreme Court interpreted the phrase "loading and unloading" when it adopted the complete operation doctrine in Titan Construction Co. v. Nolf, the Titan court did not explain what it meant for an insured to have "completed delivery" of goods under that doctrine. See 515 P.2d 1123, 1124–25 (Colo. 1973) (rejecting the court of appeals' conclusion that unloading was completed when cement came to rest in the hopper even though more cement was to be unloaded from the truck and explaining that unloading had not ceased under *either* the complete operation doctrine or the coming to rest doctrine). Because the Titan court did not substantively address the "completed delivery" language it used to describe the complete operation doctrine, language which tracks the Policy's "finally delivered" language, it is unclear how Titan sheds any additional light on the Policy terms at issue here. And, with respect to the second point, it is unclear why the majority's observation regarding the word "final" itself establishes the absence of ambiguity when the phrase at issue here contains two other operative words (e.g., "place" and "delivered").

6

the machine was to be finally delivered; and (2) Ms. Tibbe had "authority to guide or manage" how and where VO maneuvered the machine once it arrived inside her home, meaning that VO had yielded control of the machine.

Because the language in the Policy is susceptible to more than one reasonable interpretation, it "must be construed in favor of the insured and against the insurer who drafted the policy." Id. at 1090. Construing this language in favor of VO, I would conclude that it is possible that the unloading process was already complete at the time of the accident, thereby rendering the Policy's auto exclusion inapplicable. Because the mere possibility of coverage is sufficient to defeat Landmark's motion for judgment on the pleadings, United Fire, 633 F.3d at 957 (explaining that an insurer seeking to avoid its duty to defend must establish that there is *no factual or legal basis* upon which it *might* eventually be liable), I would reverse.

### b. Ms. Tibbe's injuries did not "aris[e] out of" the "use" of an "auto" because VO broke the causal chain when it attempted to maneuver the Stairmaster up the stairs.

Even assuming that the unloading process was not yet complete at the time of the accident, as the majority concludes, I would reverse for yet another reason—i.e., the absence of a causal relationship between the auto VO used to transport the Stairmaster and the injuries Ms. Tibbe sustained inside her home. Importantly, the Policy's auto exclusion does not operate indiscriminately to bar coverage for all injuries sustained within spitting distance of an auto; rather, it bars coverage for injuries only *arising out of* the use of an auto. 1 Aplt. App. 201. Thus, to meet its burden of proving that Ms.

7

Tibbe's injuries fall entirely within the Policy's auto exclusion, Landmark must demonstrate not only that an auto was in "use" at the time of the accident in the sense that the unloading process was not complete, but also that Ms. Tibbe's injuries were *causally related to that use*.

Although the Policy does not define "arising out of," binding Colorado case law does. In Titan Construction Co. v. Nolf, the Colorado Supreme Court considered whether injuries a driver sustained while discharging cement from a cement-truck were covered by an automobile insurance policy that contained similar "arising out of" language. 515 P.2d 1123, 1124 (Colo. 1973). Concluding that the driver's injuries were indeed causally related to the cement truck, the court adopted a but-for test of causation that "is satisfied if the accident would not have occurred except for the unloading of the insured vehicle." Id. at 1126. Since Titan, the Colorado Supreme Court has adhered to this but-for test and further clarified that its precedents interpreting the phrase "arising out of the use" in many different settings require "not only a 'but for' connection between the 'use' of the vehicle and the claimant's injury, *but also an unbroken causal chain between that use and the injury*." State Farm Mut. Auto. Ins. Co. v. Kastner, 77 P.3d 1256, 1260–61, 1264 & n.4 (Colo. 2003) (emphasis added). Thus, even where but-for causation exists, the causal chain between the use of the vehicle and the injury may be broken by an "independent significant act or non-use of the vehicle." Id. at 1264.

In light of this controlling Colorado law, I would conclude that the requisite causal connection is lacking here. Evening assuming that there is a "but for" connection linking

8

VO's "use" of an auto (which, per the Policy, encompasses the unloading process) to the injuries Ms. Tibbe sustained inside her home, causation is nonetheless lacking because the causal chain was broken the moment that the two VO employees began the "independent significant act" of maneuvering the Stairmaster up the stairs of Ms. Tibbe's home. This act—which would have been performed in the same manner whether VO had used an auto to transport the Stairmaster to Ms. Tibbe's home or a Radio Flyer wagon—renders the auto exclusion inapplicable.[2]

Admittedly, VO did not argue lack of causation either before the district court or on appeal. And although we typically will not raise *sua sponte* such arguments, see United States v. Abdenbi, 361 F.3d 1282, 1290 (10th Cir. 2004), I would be inclined to exercise our discretion to do so here, see Singleton v. Wulff, 428 U.S. 106, 121 (1976). As the insurer seeking to avoid its duty to defend, Landmark bears the burden of establishing that the allegations in Ms. Tibbe's underlying complaint fall *solely and entirely* within the Policy's auto exclusion. Because the phrase "arising out of" requires an *unbroken* causal chain between VO's use of an auto and Ms. Tibbe's injuries,

---

[2] By concluding that Landmark established that the auto exclusion bars coverage of Ms. Tibbe's injuries, the majority not only fails to acknowledge the Policy's causation requirement or to explain why this requirement is met, but also overlooks the reasonable expectations of insureds. See Bailey v. Lincoln Gen. Ins. Co., 255 P.3d 1039, 1048–49 (Colo. 2011) (explaining that "the reasonable expectations of insureds" can succeed over exclusionary policy language "where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue"). In my view, an objectively reasonable person would fail to understand that the Policy's *auto* exclusion bars from coverage bodily injury and property damage that (1) was sustained inside a home, and (2) would have occurred in precisely the same manner regardless of whether an auto was used. See id.

9

Landmark simply cannot satisfy its heavy burden.  This case thus presents one of those unique circumstances where we would be "justified in resolving an issue not passed on below" because "injustice" to VO will surely result where, as here, Landmark's failure to satisfy its heavy burden "is beyond any doubt."[3]  Id.

## II. Conclusion

Contrary to the majority, I do not think Landmark has met its heavy burden of establishing that it is entitled to judgment on the pleadings.  Accordingly, I would reverse the district court's order granting Landmark's motion for judgment on the pleadings and remand for further proceedings.[4]

---

[3] Of course, I recognize how unusual it is for this Court to address an argument not raised by a party.  Doing so here, even if in a dissent, ensures that future litigants, unaware that VO failed to challenge causation, do not misinterpret the majority's analysis as reading the causation requirement out of policies that, like the Policy here, tether coverage or exclusions from coverage to injuries "arising out of" specific circumstances.

[4] It follows that I would also reverse the district court's summary denial of Appellants' motion to amend counterclaims.